# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA, EX REL.
EDWARD J. BURLBAW and EX REL. DONALD D.
BUSTAMANTE,

        Plaintiffs,

v.                               No. CIV 99-1443 BB/RHS

REGENTS OF THE NEW MEXICO STATE
UNIVERSITY,

        Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court for consideration of Plaintiffs' motion to amend their complaint to add several defendants (Doc.34). The Court has reviewed the submissions of the parties and the relevant law, and, for the reasons set forth below, finds that Plaintiffs' motion will be granted in part and denied in part.

**Facts**

This case is a *qui tam* action under the federal False Claims Act (FCA), 31 U.S.C. § 3729. Plaintiffs, as Relators, claim on behalf of the United States that Defendant New Mexico State University ("NMSU") falsely certified that NMSU is minority institution. These allegedly false certifications were made in connection with research contracts sought from, and awarded by, the federal government to an institution called the Physical Science Laboratory ("PSL"). Plaintiffs originally named NMSU as the sole Defendant in this case. However, in *Vermont Agency of Natural Resources v. Stevens*, 529 U.S. 765 (2000), the Supreme Court decided that states, as well as state agencies, are not "persons" under the FCA and cannot be subject to suit as defendants in an FCA action. Following the *Stevens* decision, Plaintiffs voluntarily dismissed their complaint. The consent

of the United States was not obtained for such dismissal, however, and a final judgment of dismissal was never entered. Plaintiffs then obtained new counsel and reopened the case. In order to avoid the impact of *Stevens*, Plaintiffs now attempt to amend their complaint to name the PSL as a defendant, as well as several individual defendants in their individual capacities. The legal question presented in this case is whether the PSL or the individual employees are proper defendants in an FCA action.

**Standard to be Applied**

The Court has allowed discovery limited to the issues related to the motion to amend, such as the relationship between PSL and NMSU. Plaintiffs point out that a motion to amend is normally addressed in the same manner as a motion to dismiss, suggesting that the Court's consideration should be limited to the allegations contained in the pleadings. The Court, however, considers the situation in this case to be analogous to one in which limited discovery has been allowed on a jurisdictional issue. A court examining such an issue has wide discretion to accept and consider affidavits and other documents, and may even hold a limited evidentiary hearing. *Davis v. United States*, 343 F.3d 1282,1296 (10th Cir. 2003). The Court will therefore consider all of the evidence submitted by the parties following discovery, including affidavits and deposition experts. The Court finds that the evidence is in large part undisputed, and the main questions concern the legal significance of those facts. The Court will therefore address the case as it would a motion for summary judgment, considering the undisputed facts and construing any disputed facts in favor of Plaintiffs.

**Plaintiffs' Delay in Moving to Amend**

As NMSU points out, delay alone can be a sufficient reason to deny a motion to amend. *Pallottino v. City of Rio Rancho*, 31 F.3d 1023, 1027 (10th Cir. 1994). The delay in this case is considerable; the case was originally filed in 1999, was voluntarily dismissed by Plaintiffs in 2002, and

2

was reopened later that year, with the instant motion to amend being filed in December 2002. Plaintiffs argue that this is an unusual case because it is a *qui tam* action, and the involvement of the United States complicates matters. It is true, however, that Plaintiffs are responsible for at least the one year of delay between their voluntary dismissal and the filing of the motion to amend. Plaintiffs' only explanation for this period of delay is "procedural glitches not of the Relators' making..." On the other hand, neither NMSU nor the would-be defendants have pointed to any prejudice suffered as a result of the long delays in this case. Therefore, the Court will not deny the motion on the basis of untimeliness.

**PSL as Defendant in FCA case**

There are two separate inquiries involved in the question of whether the PSL can be a proper defendant in an FCA case. First, the Court must determine whether the PSL is a "person" for purposes of FCA; if not, the PSL cannot be a defendant. *See Stevens*. Second, even if the PSL might be considered a "person" for FCA purposes, the Court must decide whether the PSL is an arm of the state entitled to assert the state's Eleventh Amendment immunity.

Certain facts are highly relevant to the first inquiry. It is undisputed that the PSL is not incorporated, has not registered as an unincorporated association, is not a partnership, and is not any other type of recognized legal entity capable of suing or being sued. (Kite affidavit p. 2, exh. A, doc. 54) The PSL has no bank account; purchases made by the PSL are paid for by NMSU from NMSU's bank accounts. (Conroy depo. p. 126; Rushing depo. p. 79) The PSL owns no property; any property "belonging" to PSL is actually owned by the NMSU Board of Regents. (Conroy depo. p. 66; Kite affidavit p. 5) The PSL does not enter into contracts in its own name, as a contracting party; the contracting party is the NMSU Board of Regents.[1] (Kite affidavit pp. 2-3) In short, the

---

[1] Plaintiffs have submitted one page from an insurance policy naming the PSL as a "holder" of the policy. (Pltf. Exh. 23) Plaintiffs submitted no evidence or argument, however, indicating that PSL actually has the legal capacity to enter into a contract in its own name.

3

undisputed evidence shows that for legal purposes, the PSL is a division or department of NMSU, with no independent legal existence. The parties contest whether the PSL, as such a division or department, should be considered so closely aligned with NMSU as to be the equivalent of NMSU, for purposes of *Stevens* and the FCA. A more fundamental question, however, although related to the parties' arguments, is whether a department or division of a university, which does not have any legal status as a corporation or other recognized legal entity, should be considered a "person" for purposes of the FCA. The difference is merely one of focus; the legal-entity inquiry focuses solely on the PSL's legal status, while the alignment-with-NMSU inquiry focuses on the facts concerning the entire relationship between the PSL and NMSU.

Subsequent to *Stevens*, the Supreme Court addressed the question of whether municipalities, unlike states, should be considered persons under the FCA. In deciding the issue, the Supreme Court focused on the understanding of the term "person" that Congress would have had in 1863, when the FCA was originally enacted. *Cook County v. Chandler*, 538 U.S. 119, 125-27 (2003). The Supreme Court pointed out that both private and municipal corporations were understood at that time to be artificial persons, capable of suing and being sued. Based on that determination, the Supreme Court decided that municipalities and other local government entities such as counties are properly considered "persons" for FCA purposes and may be sued under that statute.[2] It is not likely, however, given the state of the common law in 1863, that Congress would have understood the term "person" to include a non-legal entity such as the PSL, which has no power to own property, enter into contracts, or sue or be sued. *Cf. People of Puerto Rico v. Russell & Co.*, 288 U.S. 476, 481

---

[2]The Supreme Court characterized counties as "quasi corporations" because they are created by a state rather than incorporated at the request of their inhabitants. This made no difference to the result of the case because the Supreme Court pointed out that at common law both quasi corporations such as counties and municipalities were treated as legal "persons." 538 U.S. at 127, fn. 7.

4

(1933) (tradition of the common law is to treat as legal persons only incorporated groups). The Court therefore holds that the PSL is not a person for purposes of the FCA.

Alternatively, the Court also holds that the PSL is simply a division or department of NMSU, is subsumed within the NMSU organizational structure, and is therefore an "arm of the state" for purposes of the FCA and the Eleventh Amendment.[3] The arm-of-the-state analysis requires the Court to examine the degree of autonomy given to the PSL, as well as the PSL's ability to provide for its own financing. *Watson v. Univ. of Utah Medical Center*, 75 F.3d 569, 574-75 (10th Cir. 1996). The financing question is significant for Eleventh Amendment purposes because immunity will be granted if a judgment against a governmental entity will necessarily be satisfied out of the state treasury. *Id.; see also Amir Ali, supra*, 355 F.3d at 1147. As previously noted, the PSL lacks any legal existence, cannot pay any bills because has no bank accounts, does not own property, and does not independently enter into contracts. The building from which the PSL operates is located on the NMSU campus, and is owned by the NMSU Board of Regents. (Conroy depo. p. 83) In addition, any debts incurred by the PSL are debts of NMSU, allocated to the PSL only for accounting purposes. (Birx depo. p. 32) The PSL's annual budget, like the annual budgets of all NMSU departments, is subject to approval by the NMSU Board of Regents. (McDonough depo. pp. 12-13) The salary paid to the director of the PSL is determined by an executive vice president or vice provost of NMSU, who is the director's immediate supervisor. (Conroy depo. p. 46; Birx depo. p. 38)

---

[3]The Court recognizes that the phrase "arm of the state" is Eleventh Amendment terminology, rather than FCA terminology. However, Plaintiffs argue the same test should be used to decide both whether a division of a state entity should be considered a person under the FCA, and whether that division should be considered an arm of the state entitled to Eleventh Amendment immunity. Furthermore, the Fifth Circuit recently employed "arm of the state" language in holding the University of California Regents, "as manager of a university hospital is not subject to FCA claims by private relators because the Regents is a state entity under *Stevens*." *United States ex rel. Adrian v. Regents of the University of California*, 363 F.3d 398, 402 (5th Cir. 2004); *see also United States ex rel. Amir Ali v. Daniel, Mann, Johnson & Mendenhall*, 355 F.3d 1140, 1146-47 (9th cir. 2004) (discussing use of arm-of-the-state test for purposes of various statutes).

Hiring decisions and decisions concerning salary increases of PSL employees are subject to approval by the NMSU personnel office or provost office. (Galvan depo. p. 39-41; Birx depo. p. 53-54) PSL employees are considered NMSU employees, participate in the same pension plan as other NMSU employees, and are subject to the same NMSU policies and procedures, although the PSL has additional policies and procedures that are applicable to its employees. (Galvan depo. p. 40; McDonough depo. pp. 78-79) The PSL does not have its own tax I.D. number, which would be required by the Internal Revenue Service if the PSL had employees of its own. (McDonough depo. p. 79) The PSL's ability to purchase equipment or services is subject to NMSU's control; any purchase over $500,000 has to be approved in advance by an NMSU vice president, and Board of Regents approval has to be obtained after-the-fact for any purchase over $10,000. (Abernethy depo. pp. 12-14) The PSL director has the same signature authority for proposals and contracts as all the deans at NMSU, and this authority has been delegated to the director by the president or provost of NMSU. (Birx depo. pp. 119-121)

In opposition to these facts, Plaintiffs rely on several pieces of evidence, which mainly concern the degree of financial independence the PSL has from NMSU. For example, the PSL derives all of its funding from the research grants and contracts it obtains from the federal government or other entities; it receives no funding from the State of New Mexico. (Conroy depo. p. 39) The PSL's existence depends on its ability to obtain such grants and contracts. (*Id.*) All PSL employees are soft-money employees paid out of the proceeds of the grants and contracts, rather than from state funds. (Conroy depo. p. 41) PSL employees are different than other NMSU employees in some respects; for example, soft-money employees such as PSL employees may at times receive raises larger than those granted hard-money employees, and soft-money employees cannot "bump" hard-money employees from their positions in the event of a reduction in force. (*Id.*) Plaintiffs also rely on the facts that the director of PSL has authority to sign contracts (albeit in the name of the NMSU

6

Board of Regents), that the PSL negotiates the contracts with grantors or contractors with little or no input from the NMSU administration, and that in general the PSL operates with a great deal of autonomy, because the NMSU administration rarely, if ever, rejects the contracts that have been negotiated. Plaintiffs point out that the PSL appears to have approximately $5 million in "surplus" funding at the moment, which might be available to satisfy any judgment rendered against PSL. Finally, Plaintiffs emphasize the fact that the PSL competes with private businesses for government research contracts, and so acts in the arena of private enterprise rather than performing a more typical state-government function.

The Court is struck by the similarities between the facts of this case and those in *Watson, supra*. In *Watson*, the medical center was governed by the university's board of trustees, and its annual budget was subject to approval by the university's board and the state board of trustees. The medical center was considered a component organization of the university. The university's president and institutional council had authority to grant final approval for the medical center's long range plan, annual budget, major construction, capital financing, and fund raising programs. The one factor militating against an arm-of-the-state finding was the fact that the medical center derived only 5% of its annual budget from state funding, receiving the rest from patient billings. The medical center therefore was essentially operating in the same manner as a private hospital. Given the overall control the university had over the medical center's operations, however, the Tenth Circuit held that the medical center is an arm of the state of Utah. 75 F.3d at 577.

As did the medical center in *Watson*, the PSL competes with private businesses and survives only due to the revenues it is able to generate from its activities. In this case, however, the control NMSU has over the PSL appears to be even more extensive than the control exercised by the state in *Watson*. NMSU owns all of the property used by the PSL, including the building in which the main PSL office is located. NMSU writes all the checks for PSL expenditures, and assumes liability

7

for all PSL debts, which are incurred in NMSU's name rather than the PSL's. In addition, NMSU has all of the oversight powers possessed by the University of Utah in *Watson*. The Court is therefore constrained to find that the PSL is an arm of the state, both for purposes of deciding whether the PSL is a "person" under the FCA and for purposes of deciding whether the PSL is entitled to the same Eleventh Amendment immunity that NMSU enjoys. Based on this finding, the Court will not allow the PSL to be named as a defendant in an amended complaint.

**Individual State Employees As FCA Defendants**

To decide whether individual PSL or NMSU employees, acting in the course and scope of their employment, may be held individually liable under the FCA, the Court must conduct two distinct inquiries. The first is statutory, as in *Stevens*, to determine whether Congress intended to include such individuals as "persons" when the FCA was enacted. The plain language of the statute applies to "[a]ny person" who submits a false claim or causes such a claim to be submitted. Furthermore, nothing in the statute creates an exception for state employees. The Court therefore finds that under the FCA, state employees are "persons" who may be sued if they are sufficiently involved in the submission of a false claim to the United States.

Since statutory analysis does not exclude the individual employees from the scope of the FCA, the Court must determine whether some source of immunity might be available to preclude this lawsuit against the employees. The Eleventh Amendment is not available to the employees, because they are being sued only in their individual capacities and damages are sought only from them individually, rather than from the state. *See Cornforth v. Univ. of Oklahoma*, 263 F.3d 1129, 1132 (10th Cir. 2001) (as a general rule, suits seeking damages from state officials in their individual capacities are not barred by the Eleventh Amendment). The fact that the state may indemnify the employees for any judgment rendered against them does not bring the Eleventh Amendment into play. *Id.*

8

The Court must therefore examine the rules of immunity that are generally applicable to state officials or employees acting in the course and scope of their duties. Normally, a government employee, even one simply performing his or her duties, is entitled to, at most, qualified immunity from suit. *See Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (for executive officials in general, qualified immunity is the norm); *Gagan v. Norton*, 35 F.3d 1473, 1476 (10th Cir. 1994) (absolute immunity is the exception and not the rule). There are limited exceptions to this rule, including situations in which the employee is acting in a prosecutorial, judicial, or legislative capacity. *Harlow*; *Gagan*, 35 F.3d at 1475 (actions of a prosecutor that are investigative or administrative are protected by qualified immunity, while prosecutorial activities are protected by absolute immunity). Under this well-established line of authority, a state employee being sued under the FCA should be entitled to qualified immunity, rather than absolute immunity, since submitting a claim to the United States is not a prosecutorial, judicial, or legislative activity.

The Court recognizes that a holding granting only qualified immunity to an individual employee sued under the FCA is in conflict with at least one circuit-court opinion and several district-court decisions. For example, in *United States ex rel. Gaudineer v. State of Iowa*, 269 F.3d 932, 937 (8th Cir. 2001), the Eighth Circuit held that an individual state official could not be sued under the FCA, in his individual capacity, unless he was acting "outside his official duties" when he took the action complained of. *See also Alexander v. Gilmore*, 202 F.Supp.2d 478, 482 (E.D. Va. 2002) (relying on *Gaudineer*). As the dissent in *Gaudineer* points out, however, this holding is tantamount to granting absolute immunity to all state employees, for FCA purposes, for any actions taken within the course and scope of their duties. 269 F.3d at 938. Such a grant of absolute immunity is contrary to the Supreme Court's public-employee-immunity jurisprudence.[4] Moreover, no governmental

---

[4]The *Gaudineer* court relied on a Ninth Circuit case, *Bly-Magee v. California*, 236 F.3d 1014, 1016 (9th Cir. 2001), for its broad grant of immunity. However, the *Bly-Magee* case involves a version of immunity derived from the prosecutorial-immunity doctrine. The individual defendants in

employee would be authorized to knowingly present a false claim, so there is no public-policy reason to immunize employees who do so. *Wells v. One2One Learning Found.*, 10 Cal.Rptr.3d 456, 472 (Cal. App. 2004).

Several district courts have held that a state employee cannot be sued under the FCA in an individual capacity, for actions taken as a state official, unless the employee obtained a personal benefit from the false claim. Without any discussion of the distinction between individual-capacity and official-capacity activities, these cases essentially hold that a state employee is acting only in an official capacity, not an individual capacity, in the absence of such personal benefit. *See Alexander*; *United States v. Stoltz*, 2002 WL 523869, fn. 3 (D. Minn. 2002) (noting that the plaintiff had not alleged that any of the defendants personally benefitted from the alleged submission of false claims to the United States); *United States v. San Francisco Housing Auth.*, 2001 WL 793300 (N.D. Cal. 2001) (cited by both *Alexander* and *Stoltz*; concluding that in the absence of any allegation of personal gain, the government officials could not be sued in their personal capacity). The Court, however, does not perceive any persuasive basis for the distinction drawn by these decisions. *Cf. Amir Ali, supra,* 355 F.3d at 1145 (rejecting district court's reliance on lack of personal benefit to individual employees, and noting that their employer profited from the alleged false claims).

The difference between an official-capacity suit and an individual-capacity suit is not whether the state employee was acting for his own benefit, or was performing an action that was not part of his regular duties. *See Hafer v. Melo*, 502 U.S. 21, 28 (1991) (rejecting argument that individual liability should be available only for actions by state officials that are outside the official's authority

---

*Bly-Magee* were the attorney general of California and several assistant attorneys general; the Ninth Circuit held these individuals absolutely immune from suit *for conduct related to litigation duties*. *Id.* In addition, *Bly-Magee* cited for support a case specifically discussing the prosecutorial-function exception and its application to certain types of civil litigation. *Fry v. Melaragno*, 939 F.2d 832, 836-37 (9th Cir. 1991). This Court does not believe *Bly-Magee* can properly be read to grant absolute immunity under the FCA to any state employee who is acting within the scope of his official duties.

or not essential to the operation of state government). Instead, a state employee is acting in an individual capacity, and may be sued as an individual, if the employee was sufficiently involved personally in a constitutional or statutory violation. *See Alden v. Maine*, 527 U.S. 706, 757 (1999) ("[A] suit for money damages may be prosecuted against a state officer in his individual capacity for unconstitutional or wrongful conduct fairly attributable to the officer himself..."). This is true even if the state officer was simply doing his job when he violated the federal constitution or statute. Application of a personal-benefit requirement to the FCA would, again, absolutely immunize state employees from liability under the FCA as long as they did not personally profit from the false statements made to the United States. As discussed above, such absolute immunity is contrary to the established rules of public-employee liability.[5]

Defendants argue that "it is doubtful" whether the official capacity/individual capacity distinction, which the Court has discussed above, is even applicable to an FCA action. They maintain the distinction, and the exception to Eleventh Amendment immunity that it provides, was created only for purposes of 42 U.S.C. § 1983 actions, for the purpose of ensuring that state officials would not violate citizens' constitutional or statutory rights. In other words, they argue in effect that individual-capacity lawsuits should not be allowed against state employees or officials except in § 1983 cases. The impact of this argument would be to grant absolute immunity to every state official or employee, acting in the course and scope of his or her employment, unless the official or employee was sued under § 1983. This is not, however, the law. As noted above, state officials or employees sued as individuals are entitled to at most qualified immunity, rather than absolute immunity, unless they are acting in a prosecutorial, judicial, or legislative capacity. The individual-capacity lawsuit and the

---

[5]Requiring an employee to have derived a personal benefit from the false claim also does not make sense on a practical level. If a state employee deliberately files a false claim with the federal government, intending to obtain greater federal funding for his agency rather than himself, that is still a violation of the FCA and the employee should still be liable as an individual for his violation of the statute. *See Amir Ali*, 355 F.3d at 1146.

11

attendant qualified-immunity doctrine are not limited to § 1983 cases, but have been applied in numerous cases addressing alleged violations of various federal statutes. *See, e.g., Cornforth, supra*, 263 F.3d at 1132-33 (discussing state officer's potential individual liability under the Family Medical Leave Act); *Tapley v. Collins*, 211 F.3d 1210, 1215 (11th Cir. 2000) (listing cases addressing eight different federal statutes under which qualified immunity was made available to defendants sued in their individual capacities); *Torcasio v. Murray*, 57 F.3d 1340 (4th Cir. 1995) (applying qualified immunity to Rehabilitation Act and ADA claims); *cf. Adrian, supra*, 363 F.3d at 402 (when relators' FCA suit does not specify the defendants were acting in official or individual capacity the court will presume they are being sued in their official capacities); *but see* Gildin, Gary S., *Dis-Qualified Immunity For Discrimination Against the Disabled*, 1999 U.Ill.L.Rev. 897 (arguing that even qualified immunity defense should not be available to cases involving federal statutes and discrimination against disabled people, and that public employees should instead have no immunity at all in such cases).[6]

Defendants' argument, and the apparent basis for cases such as *Gaudineer*, is that a plaintiff should not be able to make an "end run" around the *Stevens* decision or the Eleventh Amendment, simply by suing an individual state employee in his individual capacity. *See McVey v. Bd. of Regents*, 165 F.Supp.2d 1052, 1059 (N.D. Cal. 2001).[7] Courts have firmly rejected the argument, however,

---

[6]It is important to note that § 1983 protects against violations of federal statutes as well as the Constitution. If the individual-capacity distinction is limited to § 1983 cases, an illogical dichotomy will be created between federal statutes for which § 1983 provides the remedy and those, such as the FCA, which provide their own remedy.

[7]An individual-capacity lawsuit can be an end-run around Eleventh Amendment immunity because, even though a judgment against an individual state employee is against the employee himself and not against the state, most states have by statute or otherwise agreed to indemnify an employee who is held liable for actions taken within the course and scope of his duties. *See* Jeffries, John C., *In Praise of the Eleventh Amendment and Section 1983*, 84 Va.L.R. 47 (1998) (discussing fact that Eleventh Amendment almost never matters on a practical level, because most states will defend a lawsuit against a state employee and will pay any judgment resulting from the lawsuit).

12

that a state's agreement to indemnify its employees transforms an individual-capacity lawsuit into a suit against the state that is subject to the Eleventh Amendment. *Cornforth*, 263 F.3d at 1133. Similarly, the fact that the state may end up paying any judgment obtained against an individual state employee under the FCA should not be the basis of a holding that the employee was not acting in an individual capacity, or is entitled to absolute immunity for his actions. Under clear Supreme Court and Tenth Circuit precedent, individual-capacity suits have been allowed to be exactly what the above courts have rejected in FCA cases--an end run around a state's Eleventh Amendment immunity from suit. *See Alden*; *Cornforth*.[8]

The Court can see no principled reason to treat the FCA differently, for purposes of public-employee liability, than any other federal statute. Under other federal statutes, individual state employees may be sued in their individual capacity for violations of federal law they may have committed, and are generally entitled to only qualified, not absolute, immunity. Applying that doctrine to this case, the Court must hold the individual employees Plaintiffs seek to add as defendants are proper defendants under the FCA. For that reason, Plaintiffs will be allowed to amend their complaint to drop NMSU as a defendant and add the individual employees as defendants, in their individual capacities.

---

[8]At least two circuits have created an exception to this end-run capability, where individual supervisors of a state employee are sued in their individual capacity under employment-related statutes. *See Lizzi v. Alexander*, 255 F.3d 128, 137-38 (4th Cir. 2001), *overruled on other grounds, Nevada Dep't of Human Resources v. Hibbs*, 538 U.S. 721 (2003); *Luder v. Endicott*, 253 F.3d 1020, 1022-24 (7th Cir. 2001). According to these courts, in employment cases the state is the real party in interest, as the true employer; individual-capacity lawsuits will not be allowed to force the real party in interest to change either its personnel practices or discrete employment decisions. Since the FCA is not an employment-related statute, normal rules of immunity should apply, even if the Tenth Circuit decided to adopt the approach of *Lizzi* and *Luder*. *But see Cornforth* (applying normal individual-capacity rules to lawsuit under FMLA, an employment-related statute).

**Conclusion**

Based on the foregoing, Plaintiffs' motion to amend will be granted in part and denied in part.

**ORDER**

A Memorandum Opinion having been entered this date, it is hereby ORDERED that Plaintiffs' motion to amend (Doc. 34) be, and hereby is, GRANTED in part and DENIED in part.

Dated this 4th day of April, 2004.

_____
BRUCE D. BLACK
United States District Judge

**ATTORNEYS**:

**For Plaintiffs**:
Maureen A. Sanders
Joleen K. Youngers
Paul J. Rubino

**For NMSU**:
Kenneth L. Harrigan
Valerie V. Vigil